## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02191-RM

ROBERT E. QUINTANO,

      Applicant,

v.

STEVE HARTLEY, Warden, A.V.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

### ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

**Raymond P. Moore, District Judge.**

      The matter before the Court is an Amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254.  ECF No. 1.  The Court has determined it can resolve the

Application without a hearing.  *See* 28 U.S.C. § 2254(e)(2); Fed. R. Governing Section 2254

Cases 8(a).

### I.  BACKGROUND

      On direct appeal of Applicant's conviction, the Colorado Supreme Court (CSC)

summarized the underlying facts and proceedings as follows:

>       On October 1, 1998, Robert E. Quintano was arrested and charged in
> Arapahoe County with, among other things, five counts of sexual assault on a
> child, in violation of section 18-cv-405(1), C.R.S. (2004).  All five offenses
> occurred on the same day and against the same victim, M.H.  The jury convicted
> Quintano of three of five counts.
>
>       Quintano was a long time friend of M.H.'s family.  M.H. was fourteen-
> years-old at the time of the alleged sexual assaults; Quintano was thirty eight.  On
> July 25, 1998, the evidence indicates that he appeared at M.H.'s aunt's house
> where M.H. was babysitting.  While the two were wrestling playfully in the living

room of the house, Quintano grabbed M.H's left breast at least ten times, telling her "this is your day to get picked on." Quintano persisted, even though she admonished him to stop several times. M.H. pushed Quintano away and tried to escape.

The encounter then moved outside the house after Quintano carried M.H. to the poolside. At the pool, he grabbed her crotch area several times. Quintano then placed his hand up M.H.'s shorts and touched her vaginal area several times. There was no digital penetration. She pushed him away, but he continued by grabbing her leg, and then pushed her into the pool with his hand resting on her crotch area.

The matter reconvened inside the house. After Quintano pushed M.H. into the pool, she got out and entered the house where she proceeded to the bathroom to dry off. Quintano followed her there and again grabbed her breasts four to five times. M.H. exited the bathroom to use the telephone. Quintano followed her back to the bathroom and grabbed her buttocks, for about two to three minutes, telling her "do you know what I want to do to you? I want to eat your pussy." She tried to leave the bathroom but the defendant kept pulling her back. Lastly, the encounter relocated to the living room where Quintano bit M.H.'s left breast. M.H. could not recall specifically how long the various encounters lasted.

*Quintano v. People*, 105 P.3d 585, 588-89 (Colo. 2005).

Mr. Quintano was convicted by a trial jury of three counts of sexual assault on a child and was sentenced on October 16, 2000, to sixteen years of incarceration in the DOC. Application, ECF No. 1, at 2 and Pre-Answer Resp., ECF No. 16-27 at 14.[1] On July 3, 2003, Mr. Quintano's sentence was affirmed on appeal, but the mandatory parole portion of the sentence was vacated and the case was remanded with directions to issue an amended mittimus indicating that Mr. Quintano is subject to discretionary parole. *People v. Quintano*, No. 00CA2196 (Colo. App. July 3, 2003). Mr. Quintano petitioned the CSC for certiorari review, the Court granted certiorari on

---

[1] The Court refers to the page number that is identified by the case management and electronic case filing system (CM/ECF) at the top left-hand side of the page.

two issues, but the CSC ultimately affirmed the conviction on January 18, 2005. *Quintano v.*

*People*, 105 P.3d 585 (Colo. Jan. 18, 2005).[2]

## II. HABEAS CLAIMS

Mr. Quintano filed the instant action on August 22, 2011, asserting nine claims for relief.

The claims are as follows:

1) State district court failed to hold an evidentiary hearing in the postconviction motion proceeding in violation of due process rights;

2) Sentence is excessive, unjustified, and disproportionate compared to other like offenders' sentences;

---

[2]   Mr. Quintano proceeded to challenge his criminal conviction in postconviction proceedings. On June 16, 2005, Mr. Quintano filed a postconviction motion pursuant to Colo. R. Crim. P. 35(b). Application, Ex. J, ECF No. 16-10. The Rule 35(b) motion remained pending until February 2009. *Id.*, Ex. AA, ECF No. 16-27 at 9. In the meantime, on July 27, 2005, Mr. Quintano filed a Colo. R. Crim. P. 35(c) postconviction motion. *Id.*, Ex. K , ECF No. 16-11. The state district court denied the Rule 35(c) motion on November 15, 2005. *Id.*, Ex. L, ECF No. 16-12. Mr. Quintano appealed the state district court ruling. The Colorado Court of Appeals (CCA) rejected his claims on December 20, 2007, *see People v. Quintano*, No. 06CA0116 (Colo. App. Dec. 20, 2007) (unpublished), and the CSC denied his petition for certiorari review on September 2, 2008, *Quintano v. People*, 08SC543 (Colo. Sept. 2, 2008) (en banc).

While the appeal was pending in Mr. Quintano's first Rule 35(c) postconviction motion, he filed a second Rule 35(c) postconviction motion on March 7, 2008, along with a motion to hold the second postconviction in abeyance until he completed the pending appeal in the first Rule 35(c) postconviction motion. Application, Exs. R and S, ECF Nos. 16-18 and 16-19. Subsequently, through counsel, on January 30, 2009, Mr. Quintano filed a supplement to his Rule 35(b) motion. *Id.*, Ex. T, ECF No. 16-20. On February 19, 2009, the state district court denied the second Rule 35(c) motion and the Rule 35(b) motion. *Id.*, Ex. U, ECF No. 16-21.

Mr. Quintano appealed the state district court ruling. The CCA determined that the second Rule 35(c) postconviction motion was successive, because the claims were either made or could have been made on direct appeal or in the first Rule 35(c) motion. *Id.*, Ex. X, ECF No. 16-24. The CCA also noted that Mr. Quintano had raised certain claims for the first time on appeal which the CCA would not address because they had not been presented to the state district court and even if they had been presented to the district court they would be successive. *Id.* Mr. Quintano petitioned for a writ of certiorari; but the CSC denied the petition on April 18, 2011. Application, Ex. Y and Z, ECF Nos.16-25 and 16-26.

3) Prosecution presented questionable testimony at trial;

4) Violation of Colo. Rev. Stat. §§ 16-4-103 and 16-4-107 in not proceeding to trial within ninety days;

5) Ineffective trial and appellate counsel;

6) Constitutional violations that are ripe for review;

7) Cumulative error;

8) State district court allowed the prosecution to present numerous alleged acts without identifying the corresponding count resulting in a conviction based on uncharged acts and violating due process rights; and

9) Double jeopardy violation.

On October 5, 2011, Magistrate Judge Boyd N. Boland entered an order directing Respondents to file a Pre-Answer Response and address the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intended to raise either or both of those defenses. Respondents filed a Pre-Answer Response on November 15, 2011, and Applicant filed a Reply on December 29, 2011. Although Respondents argued that this action is barred by the one-year limitation period in 28 U.S.C. § 2244(d), District Judge R. Brooke Jackson found that the time not tolled for purposes of § 2244(d) is only 194 days and the Application has been filed within the one-year time limitation requirement. District Judge Jackson also determined that Claims One, Four, and Six failed to state a cognizable federal habeas claim and that Claims Two, Three, and Seven and the ineffective appellate counsel claims in Claim Five are procedurally defaulted. Pursuant to District Judge Jackson's April 5, 2012 Order dismissing Claims One through Four, part of Claim Five, Six and Seven, and instructing Respondents to file an answer with respect to Claims Eight

4

and Nine and the ineffective trial counsel claims set forth in the April 5 Order, Respondents filed

an Answer, ECF No. 27, on May 18, 2012.

Rather than file a Reply to the Answer, Mr. Quintano filed a Request for Stay and

Abeyance seeking leave to return to state court so he could pursue a claim based on *Missouri v.

Frye*. District Judge Jackson denied the request and instructed Mr. Quintano to file a Reply to

the Answer by December 10, 2012. Mr. Quintano filed a Reply on December 12, 2012, that only

addressed the Court's denial of his request for a stay. Mr. Quintano did not reply to the Answer.

In the December 12 Reply, Mr. Quintano argued that a stay and abeyance for a remand is

proper because both *Frye* and *Cooper* set forth a new standard of law that he should be allowed

to pursue. Neither *Missouri v. Frye*, 132 S.Ct. 1399 (2012), nor *Lafler v. Cooper*, 132 S. Ct.

1376 (2012), articulate a new rule of constitutional law. *See United States v. Medina*, No. 12-

3305, 2013 WL 500708, *3 (10th Cir. Feb. 12, 2013) (citing *Williams v. United States*, 705 F.3d

293 (8th Cir. 2013); *In re Arras*, No. 12-2195, 2012 WL 7656637, *1 (10th Cir. Dec. 11, 2012).

Applicant, therefore, fails to assert a basis for granting a stay and abeyance and now has failed to

file a Reply to the Answer within the time allowed.

### III.  LEGAL STANDARDS

### A. *Pro Se* Standard of Review

Applicant is proceeding *pro se.* The Court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a pro se litigant's "conclusory

allegations without supporting factual averments are insufficient to state a claim on which relief

5

can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume

that an applicant can prove facts that have not been alleged, or that a respondent has violated

laws in ways that an applicant has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal.*

*State Council of Carpenters*, 459 U.S. 519, 526 (1983).  An applicant's pro se status does not

entitle him to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 958 (10th

Cir. 2002).

**B.  28 U.S.C. § 2254**

Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to

any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to

28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that

was clearly established by the Supreme Court at the time his conviction became final.  *See*

*Williams v. Taylor*, 529 U.S. 362, 390 (2000).  The "review under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the prisoner's claim on the merits." *Cullen*

*v. Pinholster*, ---- U.S. ----, 131 S. Ct. 1388, 1398 (2011).  "Finality occurs when direct state

appeals have been exhausted and a petition for writ of certiorari from this Court has become time

barred or has been disposed of." *Greene v. Fisher*, ---- U. S. ----, 132 S.Ct. 38, 44 (2011) (citing

*Griffith v. Kentucky*, 479 U.S. 314, 321, n. 6 (1987).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529

U.S. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the
> facts are at least closely-related or similar to the case *sub judice*. Although the
> legal rule at issue need not have had its genesis in the closely-related or similar
> factual context, the Supreme Court must have expressly extended the legal rule to
> that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry

pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at

404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the
> state court applies a rule that contradicts the governing law set forth in Supreme
> Court cases"; or (b) "the state court confronts a set of facts that are materially
> indistinguishable from a decision of the Supreme Court and nevertheless arrives at
> a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,]
> 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting
> *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to
> mean 'diametrically different,' 'opposite in character or nature,' or 'mutually
> opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established
> federal law when it identifies the correct governing legal rule from Supreme Court
> cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we
> have recognized that an unreasonable application may occur if the state court
> either unreasonably extends, or unreasonably refuses to extend, a legal principle
> from Supreme Court precedent to a new context where it should apply. *Carter* [*v.*

7

> *Ward*], 347 F3d. [860,] 864 [10th Cir. 2003) (quoting *Valdez* [*v. Ward*, 219 F.3d [1222] 1229-30 [10th Cir. 2000]).

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable." *Id*. at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 786 (Jan. 19, 2011) (internal quotation marks and citation omitted).  The Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (internal quotation marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.

Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 131 S. Ct. at 784. ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning"). Furthermore, "[w]hen a federal claim has been presented to a state court and

9

the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. Although *Richter* concerned a state-court order that did not address any of the defendant's claims, its presumption is applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1094-98 (2013).

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [its] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the [applicant's] claims." *Id.* (citation omitted). Likewise, the Court applies the AEDPA (Antiterrorism and Effective Death Penalty Act) deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

10

# IV.  ANALYSIS

## A. Claim Five/Ineffective Trial Counsel

It was clearly established when Mr. Quintano was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Quintano must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id*. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id*.  It is an applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id*.

Under the prejudice prong, an applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  In assessing prejudice under *Strickland* the question is whether it is reasonably likely the result would have been different.  *Id*. at 791-92.  "The likelihood of a different result must be substantial, not just conceivable."  *Id*. (citing *Strickland*, 466 U.S. at 693.)

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard," which is the question asked if the claim came to the court "on direct review of a criminal conviction in a United States district court."  *Richter,* 131 S. Ct. at 785.  "When § 2254(d) applies, the question is not whether

11

counsel's actions were reasonable. The question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter,* 131 S. Ct. at 788.

If Mr. Quintano fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

As the Court found previously, *see* ECF No. 22, the only ineffective assistance of trial counsel claims that are exhausted and properly before this Court are those addressed by the CCA on the merits, which are as follows:

1) Failure to impeach M.H. and other witnesses/Investigate potentially exculpatory witnesses;

2) Failure to present an alternative defense theory;

3) Failure to assert the admissibility of phone conversation evidence;

4) Failure to present a reasonable doubt theory;

5) Failure to seek assistance from an expert;

6) Failure to inform the court that a juror saw Mr. Quintano in shackles; and

7) Cumulative error of deficient performance.

The Court will address these claims below.

**1) Strategic Decisions (Including: Impeach M.H. and Witnesses/Investigate Exculpatory Witnesses; Alternative Defense Theory; Admissibility of Phone Conversation; Reasonable Doubt Theory)**

The CCA addressed Applicant's first five ineffective assistance claims as follows:

b. Strategic Decisions

Quintano contends his trial attorney rendered ineffective assistance by failing to impeach the victim and other witnesses, present an alternative defense theory, assert the admissibility of the phone conversation evidence after the door

12

was opened, investigate potentially exculpatory witnesses, and advance a reasonable doubt defense. We are not persuaded.

To establish a claim for ineffective assistance of counsel, a defendant must show that (1) counsel's performance was outside the wide range of professionally competent assistance; and (2) the defendant was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984); *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994).

"[A] defendant has the burden to show that 'in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." [*People v.*] *Trujillo*, 169 P.3d 235, 238 (Colo. App. App. 2007) (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, 80 L. Ed. 2d 674). "A reviewing court must evaluate counsel's performance from his [or her] perspective at the time of the representation, ignoring the distorting effects of hindsight." *Id.* Moreover, the defendant must overcome a strong presumption that the challenged conduct may have been sound trial strategy. *Id.*

Additionally, an error by trial counsel does not justify setting aside a judgment unless the defendant can also establish that he or she was prejudiced by the error. *Id.* The defendant must show a reasonable probability that, but for the alleged deficient performance of counsel, the outcome at trial would have been different. *People v. Coney*, 98 P.3d 930, 934 (Colo. App. 2004).

Here, with respect to impeaching the victim and other witnesses, presenting an alternative defense theory, asserting the admissibility of the phone conversation evidence after the door was opened, investigating potentially exculpatory witnesses, and advancing the reasonable doubt defense, Quintano's attorney's decisions fall within trial strategy. Accordingly, we conclude that Quintano's attorney did not render ineffective assistance of counsel with respect to the above challenged conduct.

*Quintano*, No. 06CA0116, at 7-9.

Strategic decisions are constitutionally ineffective only if they are "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotations and citations omitted). Under *Strickland* "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.  The decision to call or not call a witness is a strategic decision not subject to review.  *Valenzuela v. United States*, 261 F.3d 694, 699-700 (7th Cir. 2001).  To call any witnesses on a defendant's behalf is a tactical decision by defense attorneys, *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999), as is trial counsel's decision to rely only on cross-examination to avoid the admission of detrimental evidence, *Jones v. Suther*, 130 F. App'x 235, *244 (10th Cir. 2005).  For the following reasons, the Court finds that trial counsel's purported errors were nothing more than strategic decisions that were not completely unreasonable, but even if the decisions were unreasonable Mr. Quintano was not prejudiced by the decisions.

### a.  Impeach M.H. or Other Witnesses/Investigate Potentially Exculpatory Witnesses

The only statement Mr. Quintano asserts in the Application in support of this claim is that trial counsel failed to call any witnesses on his behalf, even though numerous witnesses were available.  Application at 26.  Mr. Quintano otherwise only refers to the claims he raised in his Rule 35(c) postconviction motion in state court for further support of this claim.  *Id.*  The Court is not responsible for serving as Mr. Quintano's attorney in searching the record and constructing his claims in this action.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  Nonetheless, even if the Court were to consider the impeachment and failure to investigate claims, as raised in the Rule 35(c) postconviction motion in state court, a review of the trial transcript indicates counsel was not ineffective for the following reasons.

In his Rule 35(c) opening brief on appeal, Mr. Quintano contends that trial counsel failed to question M.H. to determine if her statements would be inconsistent with the statements she

gave to the police or prosecution.  Pre-Answer Resp., ECF No. 16-13, Ex. M at 22.  Mr. Quintano also asserts that trial counsel failed to (1) present witnesses who would counter where Mr. Quintano's hands were placed on M.H's body; (2) challenge the time that the bathroom incidents took place; (3) have M.H.'s boyfriend testify regarding what she stated to him on the telephone; (4) challenge M.H.'s motive, because (i) she had been punished by her parents for her recent arrest and felony charge, (ii) she knew Mr. Quintano had been charged with sexually assaulting another child, (iii) her cousin (N.H.), whom M.H. talked with about Mr. Quintano's assault, had lied about a different alleged rape incident, and (iv) M.H. through the internet, other media, and school was aware how other girls falsely report sexual assaults.  *Id.* at 23.

Mr. Quintano further asserts that trial counsel failed to impeach three witnesses, including Steve Murphy and two other unidentified witnesses.  *Id.*  Mr. Quintano contends that these three witnesses were allowed to tell their stories through direct examination by the prosecution without trial counsel challenging their statements and comparing the statements with prior statements made to the police or at hearings.  *Id.*  Mr. Quintano further contends that there was no adversarial challenge of the false rape report by M.H.'s cousin.  *Id.* at 24.

To the extent that Mr. Quintano claims trial counsel did not challenge M.H.'s story, the Respondents assert that the jury heard from witnesses who were present at the time of the sexual assault.  Answer at 43.  The jury also heard that M.H. had been arrested, received probation for damaging a car, and was grounded by her parents for damaging the car just prior to her disclosing the incident involving Mr. Quintano.  *Id.* at 43-44.  Furthermore, trial counsel cross-examined M.H. about her boyfriend and the timing of the conversation with N.H. regarding the sexual assault by Mr. Quintano.  *Id.* at 44.  The jury further heard that M.H.'s cousin had been molested

15

by her stepfather and by Mr. Quintano and had falsely reported a separate rape. *Id.* The jury also heard that Sharon Haywood and Steve Murphy were present the day of the incident and did not see Mr. Quintano molest M.H. and that they were not interviewed by the police, raising a question of the thoroughness of the police investigation. *Id.*

The Court has reviewed the trial transcript, specifically the portions cited to by Respondents, which include the transcript for December 14, 1999, CD pp. 551-55, 563-68, 598-603, 611-15, 659-69, 681-85, 690-91, 700-01, 715-22, 725-28, and 778. In addition to Respondents' assertions, the Court finds trial counsel also cross-examined M.H.'s cousin impeaching her honesty to the extent that she admitted before the jury that she is capable of lying. *Id.* at 691.

The Court further finds Mr. Quintano's claims that trial counsel should have impeached M.H. based on her access to the media and internet, involvement in school events, and knowledge of other sexual assaults against members of her family, are highly speculative. Nothing Mr. Quintano asserts demonstrates that trial counsel was ineffective in not pursuing any of these issues. Also, Mr. Quintano's claim that trial counsel was ineffective for not using recorded interviews with prosecution's witnesses to prove inconsistent statements is conclusory and vague and does not demonstrate counsel's actions were unreasonable. Mr. Quintano fails to identify what statements were included in the recordings and how the statements were inconsistent with any testimony provided at trial.

In his Rule 35(c) postconviction motion, Mr. Quintano does not assert what specific prior inconsistent statements were made by any of the witnesses. Mr. Quintano also fails to state exactly what M.H.'s boyfriend would have attested to if he was or could have been called to

16

testify.  Although Mr. Quintano contends that trial counsel was ineffective for not calling other witnesses on his behalf, he fails to assert what his uncle, wife, step-daughter, other family members, J. R., schoolmates, and Steve Murphy (identified as Richard Steven Murphy in trial transcripts, Dec. 14, 1999 Trial Tr., CD at 653), would have said on his behalf.  Pre-Answer Resp., ECF No. 16-13, Ex. M at 27.  Nor does he state that he has an affidavit from these witnesses indicating what they would have stated.

The Court also notes that trial counsel cross-examined Mr. Murphy quite extensively regarding the time he and Mr. Quintano were around M.H. on the day of the incident, establishing that the time could not have been more than thirty minutes.  Dec. 14, 1999 Trial Tr., CD at 657-69.  Trial counsel also asked questions about M.H.'s relationship with Mr. Quintano, which Mr. Murphy stated that M.H. never acted afraid of Mr. Quintano, nor did he see any sexual acts committed by Mr. Quintano against M.H..  *Id.*  Also, on cross-examination, Mr. Murphy states he was within twenty feet of Mr. Quintano the entire time they were at the aunt's house, except for the time Mr. Quintano went to the bathroom when they first arrived at the house.  *Id.*

The Court further finds that trial counsel engaged M.H.'s aunt, Sharon Haywood, in an extensive cross-examination about what she saw the day of the incident, where she was during the complete time that Mr. Quintano was at her house and near M.H., her daughter's (N.H.'s) involvement in the false rape charges, and the fact that she was not interviewed by the police about the incident.  *Id.* at 705-28.  Ms. Haywood even testified, in response to trial counsel's questioning during cross-examination, that it was impossible for Mr. Quintano and M.H. to both be in the bathroom at the same time, where M.H. alleges part of the assault took place.  *Id.* at 727.

Based on a review of trial counsel's questioning during cross-examination, and the vagueness of Mr. Quintano's investigation and impeachment claims, there is reasonable argument that trial counsel satisfied *Strickland's* deferential standard.  Even if the Court found no reasonable argument for trial counsel satisfying the standard, Mr. Quintano fails to demonstrate prejudice.

### b. Present an Alternative Defense Theory

Mr. Quintano's assertions in support of this claim are conclusory and vague and are the same claims that he raises in support of his other ineffective assistance claims.  In the Application, Mr. Quintano claims that trial counsel failed to present any defense and allowed the jury only to hear the prosecution's case.  Application at 25.  In Mr. Quintano's Rule 35(c) postconviction motion, he asserted that trial counsel failed to address (1) the sexual assault history of M.H.'s mother and aunt; and (2) M.H.'s cousin claiming a false rape.  Pre-Answer Resp., Ex. M at 24.  Mr. Quintano further asserted in the postconviction motion that trial counsel should have also presented to the jury that M.H. and N.H., through the internet and other media outlets, were aware that girls have lied about being sexually assaulted.  *Id.*

As stated above, the sexual assault history and the internet and media claims are highly speculative, and the false rape claim was adequately addressed by trial counsel on cross-examination.  The Court finds not basis for the alternative defense claim.  There is reasonable argument that trial counsel satisfied *Strickland's* deferential standard with respect to this claim, but even if the Court found no reasonable argument for trial counsel satisfying the standard, Mr. Quintano fails to demonstrate prejudice.

### c. Assert Admissibility of Phone Conversation

Mr. Quintano does not specifically address the admissibility of the phone conversation in the Application before this Court.  In his Rule 35(c) postconviction motion, Mr. Quintano argues that even after the door was open trial counsel failed to proceed to question M.H. about her telephone conversation with her boyfriend, during which Mr. Quintano alleged he heard her state that she would perform an oral sex act for the boyfriend if he paid her.  Pre-Answer Resp., Ex. M at 25.  Mr. Quintano contends that the telephone conversation was crucial because after he heard M.H.'s comments to her boyfriend, he called M.H. a "slut," and M.H. told him he "better watch out."  *Id.*  Mr. Quintano further contends that the door was opened when a witness on the stand referred briefly to an oral sex act.  *Id.*  Mr. Quintano also contends that statements about the oral sex act were critical to show M.H. had motive to cause difficulties for Mr. Quintano.  *Id.* at 25.

Respondents assert that on the first day of trial parties discussed this evidence and agreed that M.H.'s telephone conversation with her boyfriend would be considered "prior or subsequent conduct that doesn't relate to this offense" under the rape shield statute and, therefore, would not be admissible unless the door is opened.  Answer at 46; Dec. 1, 1999 Trial Hr'g, CD at 365.

The Court has reviewed M.H.'s transcript and does not find she referred to any oral sex act during her testimony.  The only sex act referred to by M.H. was what Mr. Quintano told her he wanted to do to her.  Dec. 14, 1999 Trial Tr., CD at 61.  The Court finds, however, that M.H.'s mother stated that Mr. Quintano was making derogatory comments to her daughter and that "[t]here was something about blow jobs."  *Id.* at 558.  M.H.'s mother did not refer to M.H.'s telephone conversation with her boyfriend or to any other oral sex comment by M.H.  Even if trial counsel were to have taken advantage of the comment and questioned the source of the

comment, and in what context the comment was made, the extent of the questioning would be limited to the evidence that is being refuted.

"Cross examination 'may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness.' " *United States v. Burch,* 153 F.3d 1140, 1144 (10th Cir.1998). "When the party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." *Tanberg v. Sholtis,* 401 F.3d 1151, 1166 (10th Cir. 2005). "The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." *United States v. Durham,* 868 F.2d 1010, 1012 (8th Cir. 1989) (citations and quotations omitted). "The doctrine is to prevent prejudice and is not to be subverted into a rule for injection of prejudice. Introduction of otherwise inadmissible evidence under shield of this doctrine is permitted only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *United States v. Winston,* 447 F.2d 1236, 1240 (D.C. Cir. 1971) . (citation and internal quotations omitted).

Here, there is no clear indication that trial counsel would have been able to do more on cross-examination than to clarify any impression by the jury that Mr. Quintano made the comment. Also, given the limitation placed on prior or subsequent sex acts testimony by the rape shield statute, it is highly questionable that trial counsel would have been able to question M.H.'s mother regarding M.H.'s comments to her boyfriend. It is highly reasonable that trial counsel decided to forego cross-examining M.H.'s mother about the oral sex comment. There is reasonable argument that trial counsel satisfied *Strickland's* deferential standard with respect to

this claim, but even if the Court found no reasonable argument for trial counsel satisfying the standard, Mr. Quintano fails to demonstrate prejudice.

### d. Reasonable Doubt Theory

Mr. Quintano does not specifically address a reasonable doubt defense theory in the Application.  In general, he states that trial counsel failed to present any sort of defense and relied on the prosecution.  Application at 25-26.  In the Rule 35(c) postconviction motion, Mr. Quintano relies on *Fisher v. Gibson*, 282 F.3d 1283 (10th Cir. 2002), for his argument that trial counsel was ineffective in not advancing a reasonable doubt defense theory.  Pre-Answer Resp., Ex. M at 27.  Mr. Quintano asserts in a conclusory and vague manner the basis for this claim as follows: (1) only one witness testified to the assault; (2) no forensic or physical evidence; (3) severe contradictions of witness testimony; (4) lack of defense witnesses; (5) M.H. had clear motive to lie; (6) trial counsel did not develop family history, N.H.'s lying, and knowledge to create incredible story by access to internet, media, and school events; (7) shoddy police investigation; (8) state perception that trial counsel was ineffective; (9) trial counsel did not develop inconsistencies; (10) no testimony from M.H.'s boyfriend; (11) trial counsel was ill during the trial; (12) trial counsel did not address witness credibility; (13) trial counsel did not point out defense of mens rea; and (14) trial counsel did not review tape recording of prosecution witnesses made by prior trial attorney.  *Id.* at 27-28.

Respondents assert that trial counsel did suggest to the jury that M.H. made up her story and in the opening and closing statements told the jury that the prosecution had not proven the case beyond a reasonable doubt.  Answer at 45.  Respondents further assert that trial counsel argued the case zealously that Mr. Quintano was not guilty and the investigation was inadequate.

*Id.*  Trial counsel also prepared a case instruction and the jury was instructed that "Robert Quintano contends that [M.H.] made up a story about Robert sexually assaulting her after she got into trouble with the police, and that she was assisted in creating the story by [N.H.]."  *Id.*  Finally, Respondents point out that trial counsel was able to convince the jury to acquit Mr. Quintano of several of the charges.  Mr. Quintano does not disagree with Respondents' assertions.

Furthermore, in *Fisher* the Tenth Circuit held that "[c]ounsel has a duty, at the minimum, to hold the state 'to its heavy burden to prove guilt beyond a reasonable doubt.' "  *Fisher*, 282 F.3d at 1306 (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.19 (1984).  "The overarching test for effective assistance of counsel is whether the defendant's attorney subjected the prosecution's case to meaningful adversarial testing."  *Fisher*, 282 F.3d at 1290 (citing *Strickland*, 466 U.S. at 686.  The finding of ineffective assistance of counsel in *Fisher*, however, was based on very different circumstances than those found in Mr. Quintano's case.

Mr. Quintano, nonetheless, asserts in the Rule 35(c) appeal brief that the case in *Fisher* is similar, because in both his case and in *Fisher*, the evidence was based primarily on the testimony of one self-interested witness and there was no inculpatory forensic evidence.  Pre-Answer Resp., Ex M at 27.  Unlike *Fisher*, Mr. Quintano's case is a noncapital case and the duty for investigation is not set at the such a high standard.  *See Nguyen v. Reynolds*, 131 F.3d 1340, 1347 (10th Cir. 1997).  Also, in *Fisher*, there were numerous shortcomings, omissions, and an outright disloyalty that were the basis for finding that trial counsel "failed to act as a reasonably competent advocate for his client."  *Fisher*, 282 F.3d at 1307.  Counsel in *Fisher* did not make an opening or closing statement.  *Id.* at 1283.  During direct examination of Mr. Fisher counsel

22

appeared to badger his own client in an attempt either to brow beat Mr. Fisher or to portray Mr. Fisher's testimony as unbelievable.  *Id.*  Counsel also sympathized with another witness who originally was arrested as a suspect in Mr. Fisher's case, and counsel admitted he harbored animosity toward his client, which affected his representation.  *Id.*  Finally, in *Fisher*, the trial transcript revealed that throughout his examination of witnesses counsel had no idea what answers he would receive to his questions and was not pursuing any particular strategy, which was highly detrimental to Mr. Fisher's defense.  *Id.* at 1294.

Here, a review of the trial transcript and pretrial hearings shows that trial counsel's representation did not lack a meaningful adversarial testing of the prosecution's case and fell well within the objective standard of reasonableness.  Counsel made both an opening and closing statement.  In her opening statement, trial counsel argued that the defense will prove Mr. Quintano is innocent and that the prosecution could not prove his quilt beyond a reasonable doubt because (1) witnesses will testify that Mr. Quintano was around M.H. for only thirty minutes on the day of the incident and they were there during the entire time; (2) M.H. only reported the incident after she was in trouble with the police; and (3) only after M.H. was in trouble with the police did M.H.'s cousin assert that Mr. Quintano touched her inappropriately. Dec. 13, 1999  Trial Tr. CD at pp. 529-31.

During the closing statement, trial counsel argued that Mr. Quintano is not a child molester and did not molest M.H. as she claims.  Dec. 15, 1999 Trial Tr. CD at p. 908. Specifically in the closing statement, trial counsel questioned the relationship M.H. had with her family and what truly was the reason M.H. claimed what she did.  *Id.* at 909.  She instructed the

jury to focus on whether the state proved beyond a reasonable doubt that Mr. Quintano did the things M.H. claimed he did. *Id.* 909-10.

Trial counsel posed the question of M.H.'s honesty to the jury during closing and pointed out to the jury the ineptness by the police in that Mr. Quintano was charged with the sexual assault offense, but no eye-witnesses were interviewed by the police. *Id.* at 910. Trial counsel restated Ms. Haywood's testimony during her closing statement that raised the improbability, given the logistics of the house and where the eyewitnesses were in the house, that Mr. Quintano could have sexually assaulted M.H.. *Id.* at 910-11. Finally, during her closing argument, the Court finds trial counsel zealously presented an argument for not finding Mr. Quintano guilty beyond a reasonable doubt. Counsel reviewed all aspects of the case, including (1) why the prosecution did not call the boyfriend; (2) M.H. was not thirteen but almost fifteen when this happened, not a child; (3) M.H.'s cousin was capable of lying; (4) M.H.'s statement during the police report was inconsistent with her statement before the jury when she claimed that Mr. Quintano bit her on her breast; and (5) M.H. did not report the sexual assault until after she was arrested. *Id.* at pp. 912-22.

Nothing in *Fisher* provides a basis for finding trial counsel was ineffective in presenting a reasonable doubt theory. Mr. Quintano's list of fourteen items that trial counsel was remiss in pursuing to establish a reasonable doubt defense theory is vague and conclusory. The trial transcript demonstrates there is reasonable argument that trial counsel satisfied *Strickland's* deferential standard with respect to this claim, but even if the Court found no reasonable argument for trial counsel satisfying the standard, Mr. Quintano fails to demonstrate prejudice.

**2) Expert Assistance**

Mr. Quintano asserts that trial counsel failed to call an expert. Application at 25. He also claims that trial counsel, at a minimum, was required to call an expert during trial and his sentencing to establish that he was not a sexual risk to the community. *Id.* Since Mr. Quintano did not address the sexual risk issue in his Rule 35(c) postconviction motion on appeal this claim is procedurally barred. Although his independent evaluation claim is vague, Mr. Quintano did discuss trial counsel's failure to employ an expert witness at his trial in his Rule 35(c) brief on appeal. Pre-Answer Resp., Ex. M at 15-18.

The CCA addressed the expert witness claim as follows:

> Quintano contends his attorney rendered ineffective assistance because she did not retain an expert to help prepare a defense and possibly testify concerning the victim's alleged lies. We conclude there was no prejudice.

> Generally, defense counsel's decision to retain an expert falls within trial strategy. *See, e.g., People v. Bradley*, 25 P.3d 1271, 1275-76 (Colo. App. 2001) ("the tactical decision not to call such an expert witness was within the discretion of trial counsel and does not support defendant's claim of ineffective assistance").

> Even if we assume defense counsel's failure to retain an expert constituted deficient performance, Quintano did not establish prejudice. Although he argues that an expert could have testified about a number of issues in his case, such as the victim's propensity to lie, he did not specify the substance of an expert's testimony. Thus, Quintano failed to show a reasonable probability that, but for lack of an expert witness, he would not have been convicted at trial. Without establishing prejudice, Quintano is not entitled to relief for his counsel's decision not to retain an expert.

*Quintano*, No. 06CA0116 at 9-10

The Court has reviewed Mr. Quintano's brief on appeal. Mr. Quintano asserts that an expert could have helped with all aspects of the trial, including investigation of the complex issues presented in the trial. Pre-Answer Resp., Ex. M at 16-17. Mr. Quintano asserts that the

complex issues an expert could have addressed include (1) the sexual assaults incurred by members of M.H.'s family; (2) M.H.'s arrest; (3) M.H.'s cousin reporting a false rape; (4) how to address inconsistent statements; (5) whether M.H. had seen an event on television or the internet and had used the event as the basis for her claims against Mr. Quintano; (6) how to combat the denial of the bill of particulars; and (7) how to give a clear unanimity instruction to the jury. *Id.* at 15-18.

None of the issues Mr. Quintano presented in his Rule 35(c) appeal give rise to the need of an expert. Even if any of the issues Mr. Quintano identified would have been more effectively addressed through the use of an expert, nothing he presents in the appeal brief demonstrates how the outcome of the trial would have been different. Mr. Quintano only speculates on what the expert would have been able to address and, therefore, fails to demonstrate that he was prejudiced by trial counsel's failure to consult an expert.

### 3) Inform Court About Juror Seeing Mr. Quintano in Shackles

In the Application, Mr. Quintano asserts counsel was ineffective in not pursuing a mistrial based on damaging information heard by the jury. Application at 29. Mr. Quintano does not address the shackles claim, *per se*, in the Application. Mr. Quintano, however, in the appeal of his rule 35(c) postconviction motion does address an instance where a female juror saw him in shackles when a deputy was preparing him for court. Pre-Answer Resp., Ex. M at 24. Mr. Quintano further asserts he informed trial counsel about the incident, but she failed to inform the court, and as a result he was prejudiced by the incident. *Id.*

26

The CCA with respect to this claim found as follows:

Next, Quintano asserts his counsel rendered ineffective assistance because she did not inform the trial court that one of the jurors saw him in shackles. Again, we conclude there was no prejudice.

In his postconviction motion, Quintano alleged that, while on recess in the hallway, one juror saw him being shackled by a deputy. Quintano's appeal further alleges the specific date and time at which this occurred, that other jurors may have seen him, and that his counsel and the prosecutor were present.

The presumption of innocence is directly undermined when a defendant is required to appear in court before the jury in visible restraints. *People v. Knight*, 167 P.3d 147, 153 (Colo. App. 2006). Reversible error results only if the restraints are unnecessary and prejudicial. *People v. James*, 40 P.3d 36, 41 (Colo. App. 2001).

Here, however, Quintano was not forced to appear in court before the jury in visible restraints. Rather, as noted above, he was allegedly seen by at least one juror in the hallway during a trial recess.

"Mistakes of this nature are unfortunate, and certainly steps should be taken to avoid them; however, only when exposure of a defendant in restraints to a jury is prejudicial is there reversible error." *People v. Garcia*, 627 P.2d 255, 259 (Colo. App. 1980). Moreover, it is "not unreasonable or unnecessary for a defendant to be handcuffed [or otherwise restrained] when being moved to and from the courtroom." *Hamrick v. People*, 624 P.2d 1320, 1323 (Colo. 1981) (quoting *Mclean v. People*, 172 Colo. 338, 347, 473 P.2d 715, 719-20 (1970)).

Even if we assume Quintano's trial counsel's performance was deficient for failing to inform the trial court that at least one juror may have seen Quintano in restraints, we conclude there was no prejudice. Quintano's exposure to the juror, and potentially other jurors, in restraints was inadvertent and of short duration. *See Garcia*, 627 P.2d at 259 (no prejudice because juror's view of shackled defendant was inadvertent and of short duration). The situation occurred outside the courtroom, *see Hamrick*, 624 P.2d at 1323 (no prejudice because outside courtroom), and the court instructed the jury that Quintano was presumed innocent until proved guilty and the prosecution had the burden of proving Quintano's guilt beyond a reasonable doubt. *See James*, 40 P.3d at 41 (no prejudice where jury properly instructed). Moreover, the jury ultimately acquitted Quintano of third degree assault, false imprisonment, crime of violence, and two counts of sexual assault on a child. *See id.* at 42 (no prejudice where defendant was acquitted of some charges).

27

> Therefore, Quintano failed to show a reasonable probability that, but for one or more jurors seeing him in restraints, he would not have been convicted at trial.  Without establishing prejudice, Quintano is not entitled to relief for his counsel's decision not to inform the court of the situation.

*Quintano*, 06CA0116 at 10-13.

"In itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial."  *See United States v. Jones,* 468 F.3d 704, 709 (10th Cir. 2006).  Such a viewing must result in prejudice to violate a defendant's due process rights, and the burden is on the defendant to show the prejudice.  *United States v. Ware*, 897 F.2d 1538, 1542 (10th Cir. 1990), *abrogated on other grounds by United States v. Jones*, 235 F.3d 1231 (10th Cir. 2000).

Here, the jury had been instructed by the trial court that Mr. Quintano was presumed innocent until proven guilty, *see* Dec. 13, 1999 Trial Tr., CD at 520, and the jury is presumed to have followed this instruction, *see Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  The incident took place outside the courtroom, was brief, and only one juror was seen by Mr. Quintano.  Even if trial counsel was remiss in reporting the incident to the trial court, nothing Mr. Quintano asserts shows he was prejudiced.

**4) Cumulative Error**

Given that each of Mr. Quintano's ineffective assistance claims lack merit, the Court finds no basis for his cumulative error claim.

**5) Conclusion**

Based on the above findings, the CCA decision regarding Mr. Quintano's ineffective assistance claims did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This claim, therefore, lacks merit and will be dismissed.

**B.  Claim Eight/Uncharged Acts**

Mr. Quintano asserts that his due process rights were violated when the trial court denied his motion for a bill of particulars, in which he asked the prosecution to provide more detailed information about the five identical counts of sexual assault. Application at 29. Mr. Quintano also asserts that without an election of the acts or acts the jury convicted him on uncharged acts. *Id.*

**1. Bill of Particulars**

With respect to the bill of particulars claim, the CCA found as follows:

> In ruling on a request for a bill of particulars, the trial court should consider whether the requested information is necessary for the defendant to prepare his defense or to protect against subsequent prosecution. *Woertman v. People, supra*; *People v. District Court*, 198 Colo. 501, 603 P.2d 127 (1979).

> Here, the information charged defendant with five counts of sexual assault on a child, all allegedly committed on the same date. It did not, however, describe the specific incident on which any individual charge was based. Defendant filed a motion for bill of particulars seeking identification of the "precise nature of the sexual contact charged" in each count, the number of sexual acts on which each charge was based, the names of witnesses, and the "precise times and locations corresponding to the sexual acts that are alleged to have occurred."

> The trial court denied the motion, concluding that the probable cause affidavit filed with the charging document and the discovery the prosecution had already produced provided defendant with all the information he requested in his motion.

> There was no abuse of discretion in the trial court's ruling. The record demonstrates that defendant was on notice that he was charged with five separate and distinct instances of sexual contact with the victim. Indeed, at the preliminary hearing, although the prosecutor did not assign a particular charge to each separate

incident of alleged sexual misconduct, she specifically identified the five incidents that were the bases of all the charges, collectively.  In addition, the charging document and the probable cause affidavit provided defendant with the names of all the witnesses to the events that gave rise to the charges.

Hence, the record does not support defendant's assertion that he was unaware until trial that he would be required to present a defense against multiple instances of sexual misconduct as distinguished from one continuous act.  Nor did the trial court's denial of his motion for bill of particulars result in his being forced to rely on a "defense of general denial" or deprive him of the ability to "investigate further" and to "determine if there were other witnesses."

*Quintano*, No. 00CA2196 at 3-4.

The Court may grant habeas relief in a challenge to the adequacy of the information only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution.  *Knewel v. Egan*, 268 U.S. 442, 446-47 (1925); *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999).  Under the Sixth and Fourteenth Amendments, a defendant is entitled to fair notice of the criminal charges against him, and claims of due process violations in not providing such fair notice are cognizable in habeas corpus actions.  *See Hunter v. State of New Mexico,* 916 F.2d 595, 598 (10th Cir. 1990); *Franklin v. White,* 803 F.2d 416 (8th Cir. 1986), *cert. denied* 481 U.S. 1020 (1987).  The sufficiency of a state charge is determined by the Sixth Amendment right "to be informed of the nature and cause of the accusation."  *United States v. Cruikshank,* 92 U.S. 542, 557-58 (1875) (internal quotations and citations omitted); *In re Oliver,* 333 U.S. 257, 273 (1948); *Rabe v. Washington,* 405 U.S. 313  (1972).  Where the charge embodies the wording of the statute, which is fully descriptive of the offense, it is constitutionally sufficient.  *Potter v. United States,* 155 U.S. 438 (1894).  The sufficiency of an information is not a federal habeas issue unless the information is so deficient that the convicting court was deprived of jurisdiction.  *Ferguson v. Davies*, No. 91-3052, 1991 WL 159849 at *6

(10th Cir. 1991) (unpublished) (citing *Heath v. Jones,* 863 F.2d 815 (11th Cir. 1989)); *Uresti v.*

*Lynaugh*, 821 F.2d 1099 (5th Cir. 1987).

The felony complaint charged Mr. Quintano as follows:

> FIRST COUNT [SECOND, THIRD, FOURTH, and FIFTH] and JAMES
> J. PETERS, District Attorney in and for the Eighteenth Judicial District of the
> State of Colorado, in the name and by the authority of the People of the State of
> Colorado, informs the Court that on or about JULY 25, 1998, in the County of
> Arapahoe, State of Colorado, ROBERT EDWARD QUINTANO did unlawfully,
> feloniously and knowingly subject another, namely, Margaret Heaton, not his
> spouse, to sexual contact, and Margaret Heaton was less than fifteen (15) years of
> age and ROBERT EDWARD QUINTANO was at least four (4) years older than
> Margaret Heaton; in violation of Section 18-3-405(1), C.R.S.; SEXUAL
> ASSAULT ON A CHILD. . . .

*Quintano*, No. 98CR2599, Flat File, Vol. 1 at 33-34.  The felony complaint against Mr. Quintano

was entered on October 1, 1998.  At the November 12, 2013 preliminary hearing, the prosecution

identified the five counts as follows:

> I have charged one incident where he [Mr. Quintano] is touching her breast over
> and over again.  I have charged one incident where he is grabbing her legs,
> grabbing between her legs and her vaginal area and in having included in that
> incident where he reaches up and touches her vagina.  It is a separate body part
> even, he is not touching her breasts anymore, he is touching between her legs, he
> puts his hand up her shorts and touches her on her vagina.  That is a separate and
> distinct group of acts and again if I were just charging each and every single thing
> he did, I could have charged that as several sexual assaults.  Then there is the time
> where he follows her into the bathroom, now in a different location, again grabs
> her breasts three or four more times.  Again I have not charged that as three or
> four separate counts, I have charged that as one incident where he is not [sic]
> sexually assaulting her on the breast.  I have then also charged as a separate
> incident where he then takes his hand and puts it on her buttocks and doesn't
> remove it for two to three minutes.  Again, a separate body part, a separate and
> distinct act.  Then he follows her to a different location in the living room and
> bites her on the left breast, this is not just one assault, this is separate and distinct
> acts of continuous harassment or on [sic] going harassment of this little girl.  Each
> one is separate from the other.  Based on that Judge, I would ask the Court to bind
> over all the counts as charged.

Nov. 12, 1998 Prelim. Hr'g, CD at 334.  Based on the above findings, Mr. Quintano had

sufficient notice of the charges against him to prepare his defense.  The felony complaint

embodies the wording of the statute and is fully descriptive of the offense.  The description of the

charges by the prosecution at the preliminary hearing was sufficient and did not deprive the trial

court of jurisdiction.  As discussed above under Section "A. Claim Five/Ineffective Trial

Counsel," trial counsel effectively addressed each incident that was set forth in the five counts

through cross-examination of M..H., M.H.'s cousin, aunt, mother, and father, Mr. Murphy, and

the police officers involved in the investigation of the incident.  Trial counsel effectively

challenged the credibility of M.H. and other witnesses in an attempt to show M.H. had fabricated

the claims against Mr. Quintano.

The CCA decision regarding Mr. Quintano's bill of particulars claim did not result in a

decision that was contrary to, or involve an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States and did not result in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  This claim, therefore, lacks merit and will be dismissed.

### 2. Conviction on Uncharged Acts

Mr. Quintano asserts that his due process rights were violated when the trial court failed

to give a proper unanimity instruction directing the jurors to either unanimously agree he

committed the same act or acts or committed all the acts described by M.H.  Application at 37-

38.  Mr. Quintano further asserts that even the CCA concluded that the trial court erred in failing

to compel an election of counts and by giving the jury the standard unanimity instruction.  *Id.* at

43.

With respect to the uncharged acts claims, the CCA found as follows:

> We conclude, therefore, that the court should have required the prosecution to elect which of the five incidents related to each of the five charges. Likewise, it erred in giving the jurors the typical unanimity instruction.
>
> However, we also conclude that such error, given all of the circumstances here, was harmless.
>
> First, there can be no doubt but that the three convictions here are based upon five specific incidents.  There is no question, therefore, of the incidents or of the evidence upon which all five verdicts were based.
>
> The unanimity instruction told the jurors that, with respect to each count, they had either to agree upon the same incident or agree that all of the incidents had been proven.  We assume that they followed this instruction.  *See People v. Moody*, 676 P.2d 691 (Colo. 1984).  And, because they acquitted defendant of two counts, it is clear that they agreed upon the same separate incidents for each of the three counts upon which they returned their guilty verdicts.  Concededly, however, there is no way to identify <u>any</u> of the five incidents as the ones relied upon by the jury for the three guilty verdicts.
>
> Second, defendant does not assert that the evidence was insufficient to support any of the five charges.  The evidence of each of the five incidents relied upon by the prosecution was legally sufficient to support a conviction, although the jury declined to convict him on two of the charges. . . .
>
> In short, while it may be impossible to determine which of the five incidents the jurors relied upon, the record makes clear what incidents were relied upon for all of the charges collectively, the jurors agreed upon a separate incident to support each of the these convictions, the evidence was legally sufficient to support a conviction for each, and no other circumstance worked to defendant's prejudice.  The error of the trial court was, under these circumstances, harmless.

*Quintano*, No. 00CA2196 at 7-8.

The CSC granted certiorari review with respect to the unanimity claim and found as

follows:

> Quintano wrongly asserts that the trial court instructed the jury that for each count, it had to agree unanimously that he "committed ONE of the acts, or ALL of the acts."  Instead, the trial court affirmatively instructed the jury in Instruction 19 that they must "unanimously" agree that "the defendant committed the *same act* of sexual contact *for each separate count*."  The verdict forms required the jury to elect either an interrogatory denoting that they agreed that

33

Quintano committed "the same act" or "all of the acts." For the three verdicts of guilt, the jury chose the box indicating that they agreed that Quintano committed "the same act." Importantly, as well, they did not convict on Count 5—the only count associated with differing language on the verdict form, which related to physical injury (the breast biting incident).

We have consistently employed the presumption that the jury understands and applies the given instruction unless a contrary showing is made. *See People v. Shields,* 822 P.2d 15, 22 (Colo. 1992); *Sanchez v. People,* 820 P.2d 1103, 1106 (Colo. 1991); *People v. Moody,* 676 P.2d 691, 697 (Colo. 1984). Even though the *possibility* exists that the jury may have convicted Quintano of more than one offense premised on the same act, we adopt the "less strained reading" that an ordinary reasonable jury would understand that when two or more counts charge the same crime, each count must be supported by a different act. *See State v. Ellis,* 71 Wash. App. 400, 859 P.2d 632, 635 (1993); *State v. Noel,* 51 Wash. App. 436, 753 P.2d 1017, 1018 (1988). There is no question but that the underlying evidence emphasized five discrete incidents of sexual contact by Quintano. M.H. testified that Quintano touched her breast several times in the living room; touched her crotch area near the pool; touched her breast in the bathroom; left and returned to the bathroom where he touched her buttocks; and proceeded to the living room where he bit her breast.

As a whole, the record demonstrates that the jury understood their tasks and arrived at some means of demarcating the various incidents of sexual contact. *See Shields,* 822 P.2d at 22 (presuming the jury understood and followed the instruction because the evidence did not suggest that the jurors' confusion about the distinction between the crimes charge impaired their ability to assess the evidence in terms of the instruction given). Although the jury's task would have been made easier had the prosecution designated specific incidents for each count, the unanimity instruction averted the pitfall of more than one conviction for the same acts. The jury was told that they had to agree to the same act or acts as basis for each count of sexual assault on a child.

Consequently, we conclude that there was no due process violation arising out of the failure to elect specific acts for each count of the complaint and information.

*Quintano*, 105 P.2d at 594-95.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). But, not every "ambiguity, inconsistency, or

deficiency" in a jury instruction renders the instruction constitutionally infirm. *Middleton v. McNeil,* 541 U.S. 433, 437 (2004). It is not "the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). The CSC found authority for the prosecution's combining of several counts in a single indictment in this case under Colo. R. Crim. P. 8(a), and 1A Charles Alan Wright, *Federal Practice and Procedure* § 141, at 5 (Crim.3d ed. 1999 & Supp.2004); *see also Ruth v. County Court,* 198 Colo. 6, 8, 595 P.2d 237, 239 (1979). *Quintano*, 105 P.3d at 590 (Even if sexual assault offenses admissible in separate trials may be joined in single indictment; consolidation of offenses fosters efficiency and effective administration of criminal trials.)

"Errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen*, 131 F.3d at 1357 (internal quotation marks and citations omitted); *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Even if the alleged error committed by the trial court was a constitutional one, Mr. Quintano must demonstrate that the error had "a substantial and injurious effect in determining the jury's verdict," as required under the plain error standard of review. *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993). To obtain relief, a habeas application must demonstrate that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).

Here, as noted by the CCA, the prosecution explained to the jurors that

[n]ow, what this means is, is that you as a jury must agree as to which part of the allegations you are going to use to support which count.  That is something you must unanimously agree.  So part of you can't be saying that's the butt incident and the other part be saying that's the breast incident.  You must all agree to what you're talking about, and then find beyond a reasonable doubt that that part of the event occurred.

*Quintano*, Dec. 16, 1999 Trial Tr., CD pp. 905-06.  The Court further notes that the jury indicated on the verdict forms for counts 1, 2, and 3 that they "unanimously find, beyond a reasonable doubt, that the defendant committed the same act of sexual contact with the victim described by the evidence on or about July 25, 1998."  *See Quintano*, Flat File, Vol. at 223, 225, and 227.

Given that the jurors were told that they must unanimously agree about the same incident (prosecution identified five separate incidents) when finding Mr. Quintano committed the act and it is assumed that jurors follow instructions, the Court finds that to the extent the instruction may have been erroneous, as found by the CCA, the instruction did not infect the entire trial so that the resulting conviction violated Mr. Quintano's due process rights.

Therefore, nothing in the CCA or CSC's decisions, regarding Mr. Quintano's uncharged acts and unanimity claims, is contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This claim, therefore, lacks merit and will be dismissed.

## C. Claim Nine/Double Jeopardy

Mr. Quintano asserts that because the three counts he was convicted of were worded identically the counts were multiplicitous and the constitutional prohibition against double jeopardy was violated. Application at 46.

With respect to this claim, the CSC found as follows:

> Here, then, each act of touching cannot suffice as a separate offense. However, while we do not adopt any specific list of factors to determine whether the defendant's acts constitute factually distinct offenses, we look to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses. *Cf. State v. Griffin,* 148 Ariz. 82, 713 P.2d 283, 287 (1986) (noting that when applying the "identical elements" test, the focus is on the evidence actually presented at trial, to establish that each punishment could have related to a different act). One fact is whether the People treated the defendant's acts as legally separable. *Gray* [*v. United States*, 544 A.2d 1255, 1259 (D.C. 1988)]. At the preliminary hearing, the People established five distinct incidents of sexual contact on which they sought to rely for conviction. FN4 (People's statement regarding distinct incidents quoted in full above on Page Thirty-One). At trial, the victim, her mother and the investigating officers testified to the sequence of events in the same manner—touching the victim's breast several times in the living room; relocating the victim outside the house to the pool area and touching the victim's vaginal area; touching her buttocks in the bathroom; leaving and returning to the bathroom then touching her breasts; and biting her breasts in the living room.

> The record evidences that the defendant had sufficient time to reflect after each encounter. He persisted after the victim admonished him to stop several times. Each incident occurred in a different location, or after the victim had left a location and returned there. As well, the record reflects sufficient breaks between each incident to allow the defendant time to reflect. Moreover, the defendant's statements supported the forming of renewed intentions. Though the record does not disclose specifically how long each incident lasted, the facts prove that the defendant's conduct was separate in temporal proximity and constituted a new volitional departure in his course of conduct. Accordingly, we conclude that the evidence supported five separate offenses and that the convictions are therefore not violative of double jeopardy.

*Quintano*, 105 P.3d 585, 592 (Colo. 2005).

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." *Missouri v. Hunter,* 459 U.S. 359, 365 (1983). Mr. Quintano's right to be free from double jeopardy was not violated by the information in this case. The constitutional guarantee against double jeopardy consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794 (1989) (no presumption of vindictiveness when first sentence was based on guilty plea and second sentence follows a trial).

The Double Jeopardy Clause is not violated when multiple, but separate, violations of the same provision are charged in multiple counts. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter,* 459 U.S. at 366. This protection is limited to ensuring that "the sentencing discretion of courts is confined to the limits established by the legislature" because the legislature is vested with the "substantive power to prescribe crimes and determine punishments." *Ohio v. Johnson,* 467 U.S. 493, 499 (1984).

Federal courts in a habeas corpus proceeding are bound to accept the CSC's construction of Colorado statutes. *See Hunter*, 459 U.S. at 368; *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974). In determining whether a defendant's conduct constitutes a single criminal offense or separate criminal offenses for double jeopardy purposes, the federal courts defer to the state court's interpretation of the relevant statutory provisions. *Lucero v. Kerby,* 133 F.3d 1299, 1316 (10th Cir. 1998). Here, the CSC found that the "unit of prosecution" for sexual assault on a child is

"any sexual contact," noting that the legislature only authorized a single punishment for all discrete acts of touching that occur within a single incident of sexual assault on a child. *Quintano v. People*, 105 P.3d 585, 590-91 (Colo. 2005).  Under *Woellhaf v. People*, 105 P.3d 209, 218 (Colo. 2005), the prosecution may assert multiple charges under the child sexual assault statute if the supporting evidence for each count justifies the charging of distinct offenses.  Here, at least five incidents were described by the prosecution and were sufficiently supported by the evidence.  Thus, Mr. Quintano fails to show a violation of the Double Jeopardy Clause

Based on the above findings, the CCA's decision is not contrary to, or an unreasonable application of, established Supreme Court precedent.  The double jeopardy claim lacks merit and will be dismissed.

## V. CONCLUSION

Based on the above findings, the Court will dismiss the Application for lack of merit.

## VI. ORDERS

Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c).  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal.  *See*

*Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Quintano files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, May 17, 2013.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge